IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, #R54570, <br><br> Plaintiff, <br><br> v. <br><br> CHAD ADAMS, JEFFREY DENNISON, JOSEPH DUDEK, JAMES GROVES, GARRICK HALE, DANIEL HARRISS, CHARLES HECK, JUSTIN KULICH, LARUE LOVE, SETH MERACLE, STEVEN MUMBOWER, SCOTT PETITJEAN, CHARLES SWISHER, TREG VANDEKERKHOVE, AND CHAD WALL, <br><br> Defendants. | Case No. 20-cv-00533-SPM |

## **MEMORANDUM AND ORDER**

**MCGLYNN, District Judge:**

This matter is before the Court on Defendants' motion for partial summary judgment on the issue of exhaustion. Defendants argue that Plaintiff Joshua Lee Hoskins failed to exhaust his administrative remedies prior to filing suit. (Docs. 54, 55). Hoskins opposes the motion. (Doc. 62). On July 8, 2021, the Court held an evidentiary hearing and took the matter under advisement. Based on the reasons delineated below, the Court grants in part and denies in part the partial motion for summary judgment.

BACKGROUND

On June 5, 2020, plaintiff Joshua Lee Hoskins ("Hoskins"), an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Dixon

Correctional Center ("Dixon"), commenced this action by filing a Complaint pursuant to 42 U.S.C. § 1983 (Doc. 1). Hoskins alleges that while incarcerated at Pinckneyville Correctional Center ("Pinckneyville"), he was not provided with cleaning supplies while in segregation, was retaliated against for filing grievances, was not given redress or consideration by the counselors and was not moved after a fire in a neighboring cell. (Doc. 1). On June 8, 2020, following preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, the following claims remain:

**Count 1:** Eighth Amendment claims against Adams, Dennison, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement, from June 5, 2019 until September 25, 2019, and January 6, 2020 until February 6, 2020, in R5 house.

**Count 2:** First Amendment claim against Adams, Dennison, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement in R5 house in retaliation for filing lawsuits and grievances.

**Count 4:** Eighth Amendment claim against Dudek, Meracle, and Kulich for failing to protect Hoskins from the fire set in the neighboring cell on August 31, 2019. (Doc. 6).

On February 22, 2021, defendants filed a partial motion for summary judgment on the issue of exhaustion, along with supporting memorandum of law (Docs. 54, 55). In the motion, defendants argue that Hopkins failed to exhaust his administrative remedies by not properly completing the grievance process before filing his lawsuit (*Id.*). Specifically, defendants claim Hoskins failed to exhaust *any* grievances related to the allegations in this Complaint after September 3, 2019 (Doc. 55, p. 2) (emphasis added). Moreover, defendants argue that no grievances were

exhausted related to defendants Dudek, Meracle and Kulich for failing to protect him following the fire in the neighboring cell on August 31, 2019 (Doc. 55, p. 2).

Defendants do concede that Hopkins exhausted three (3) grievances dated September 3, 2019 and one (1) grievance dated August 2, 2019 (Doc. 57). However, these grievances only related to defendants Adams, Dudek, Groves, Hale, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekherove, and Wall, and they pertain to the uncleanliness of the cell, *i.e.,* lack of cleaning supplies and other human necessities needed, which Hoskins claims was in retaliation for filing previous lawsuits and grievances (Doc. 55, p. 3).

On March 1, 2021, Hoskins filed a response in opposition to the motion for partial summary judgment (Doc. 62). Hopkins argued that he had a history of filing his grievances properly and of exhausting his remedies properly (*Id.*, ¶ 1), and further asserted that he had an extensive history of filing grievances against defendants and not receiving the responses nor the grievances back (*Id.*, ¶ 2). Hoskins claimed that the fact that only some of the grievances against some of the defendants were exhausted does not make sense and proves that he had issues getting the grievances processed (*Id.*, ¶ 3). As such, Hoskins forwarded some grievances directly to the Administrative Review Board ("ARB"), and requested they forward them to Pinkneyville with getting his grievances addressed prior to filing his complaint by forwarding them directly to the ARB without getting a counselor response, which he claims refutes defendants argument and proves the ARB could have assisted him (*Id.*, ¶ 4). He claimed he requested assistance from the ARB by sending the grievances to the ARB and requesting they be forwarded to the facility for a response to bypass

them getting lost or misplaced. (*Id.*). Hoskins further claims the ARB was on notice of his issues because he forwarded them his grievances, which they returned to Pinckneyville (*Id.*). Hoskins provided numerous documents with his response, which he labelled as Exhibits A-G and 1-4 and AA1-3 (*See* Doc. 62).

On June 9, 2021, Hoskins filed a second supplemental response in opposition to motion for partial summary judgment and attached a copy of a court Order entered by the Honorable Magistrate Judge Reona Daly in cause number 20-CV-00533-RJD on 06/01/21 following a Pavey hearing in that case (Doc. 74). On July 6, 2021, Hopkins filed another response (Doc. 78)

## LEGAL STANDARD

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id*. The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Moreover, "[t]o exhaust remedies, a prisoner must file complaints and

appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows:
>
> (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate.
>
> (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether
>
>> (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust;
>>
>> (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or
>>
>> (c) the failure to exhaust was the prisoner's fault, in which event the case is over.
>
> (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial

discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies. *Id*. at 742.

## ANALYSIS

The Court has reviewed the voluminous documents attached to the various briefs, including plaintiff's cumulative counseling summary. On July 8, 2021, pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), this Court held an evidentiary hearing on the issue of exhaustion. At the hearing, 3 employees from Pinkneyville testified, as did Hoskins, who emphasized his position in the briefs, his familiarity with the grievance process and his inability to exhaust his remedies for various reasons.

### Evidentiary Hearing

**1. Joshua Lee Hoskins**

Hoskins testified that he arrived at Pinckneyville on June 5, 2019 and was familiar with the grievance procedure established by IDOC. He understood the grievance must first be filed with the counselor, and if he is not happy with response, he can appeal it to the second level. If he is not satisfied with that response, he can send it to the ARB. Further, if inmate has an issue that the counsel cannot address, the grievance goes directly to the second level. Hoskins claims he had one counselor at Pinckneyville who was processing his grievances, but once he moved to other cell houses, his grievances were not being processed. He agrees that any grievances after September 2019 were not exhausted because they could not be since the counselor was not processing them, so he sent them to ARB to get Pinckneyville to process.

### 2. Chalene Hale

Hale is one of two grievance counselors at Pinckneyville who has been with IDOC for 22 years. Hale went through the grievance process and indicated that she answers the grievances at the second level. Although Hale had never responded to any of Hoskins grievances, she testified that she was not aware of anyone destroying his grievances and noted that he filed grievances in time periods where he said he could not when he was sending others directly to the ARB.

### 3. Robert Samolinski

Hoskins was transferred to Pinckneyville in June 2019 and was assigned to counselor Robert Samolinski until September 17th. Samolinski was the counselor in the R5 house. Hoskins claimed to have had no issues with Samolinski responding to his grievances. Samolinski testified that he has been a counselor since 2014 and was familiar with Hoskins as he filed 59 grievances between June and September 19, 2019.

### 4. Jesse Reid

Jesse Reid testified that he has been a counselor at Pinckneyville for approximately three years and was familiar with Hoskins and the grievance process. Reid was Hoskins counselor in January and February 2020. He responded to Hoskins' grievances while he was his counselor, but did not know how many times. He testified that he responded to every grievance he received.

## Grievances

IDOC has an established process for handling grievances. As an inmate confined within the Illinois Department of Corrections, Hoskins was required to

follow the regulations contained in the Illinois Department of Corrections' Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 ILL. ADMIN. CODE §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 ILL. ADMIN. CODE §504.810(a). The grievance form must:

> "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible." 20 ILL. ADMIN. CODE §504.810(c).

Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 ILL. ADMIN. CODE §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE §504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id*.

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he

or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE §504.850(e).

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus, the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the

Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE §504.850(f).

Though the Seventh Circuit requires strict adherence to the exhaustion requirement, *Dole*, 438 F.3d at 809, an inmate is required to exhaust only those administrative remedies that are available to him. 42 U.S.C. § 1997e(a). Administrative remedies become "unavailable" to prisoners primarily when prison officials fail to respond to a properly filed grievance or when prison officials' "affirmative misconduct" thwarts a prisoner from exhausting. *E.g., Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Dole*, 438 F.3d at 809.

## DISCUSSION

This Court has evaluated the briefs as well as the arguments posed at the evidentiary hearing. This Court finds that Hoskins has exhausted his administrative remedies with respect to Counts 1 and 2; however, this Court also finds that Hoskins has not exhausted his administrative remedies with respect to Count 3.

This Court agrees that Hoskins completed the administrative review process with respect to the three grievances dated September 3, 2019 as well as the one grievance dated August 2, 2019 regarding the conditions of confinement in the R5 house as an ongoing condition from June 5, 2019 through September 17, 2019. Even though the grievances were filed before the conclusion of the time-period, this Court finds it was ongoing and continuing conduct that clearly lasted through his incarceration in R5 and there was no need to file multiple, successive grievances for the same conduct. *See Turley v. Rednour,* 729 F.3d 645, 650 (7th Cir. 2013).

This Court next considers the time period of January 20, 2020 to February

2020 and whether Hoskins made efforts to exhaust his administrative remedies. At the hearing, Hoskins testified that he had concerns about counselor Reid and whether he was answering all of his grievances, so he claimed he sent the grievances directly to the ARB and requested assistance and for them to forward his grievances to the facility for review. These letters were provided to the Court and pre-date the filing of this lawsuit. Many of the letters were file stamped "Received Administrative Review Board" with dates in February 2020 and March of 2020 wherein Hoskins claims that his grievances were not being handled by counselor Reid, which corroborates his testimony at the evidentiary hearing. As such, this court finds sufficient evidence find futility.

Finally, with respect to the fire in the neighboring cell, this Court questions why Hoskins sent the grievance to the ARB on September 8, 2019 instead of giving to Samolinski. At the hearing, Hoskins testified that he had no concerns or issues with Samolinski's handling of his grievances and that Samolinski was his counselor until September 17, 2019, so this Court does not believe that reaching out to the ARB for assistance was necessary. As such, Hoskins did not exhaust all available administrative remedies with respect to that particular grievance.

## DISPOSITION

For the reasons stated above, the Motion for Summary Judgment (Doc. 58) is **GRANTED in part** and **DENIED in part.** Count 4 is DISMISSED without prejudice for failure to exhaust administrative remedies. Count 1 is divided into two separate time periods. As such, the remaining claims are as follows:

**Count 1:** Eighth Amendment claims against Adams, Dennison, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle,

        Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement: (a) from June 5, 2019 until September 17, 2019, and (b) from January 6, 2020 until February 6, 2020, in R5 house.

**Count 2:**    First Amendment claim against Adams, Dennison, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement in R5 house in retaliation for filing lawsuits and grievances.

The stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits. A new scheduling order will be entered by separate order.

**IT IS SO ORDERED.**

**DATED: July 26, 2021**

                                      **/s/ Stephen P. McGlynn**
                                      **STEPHEN P. McGLYNN**
                                      **U.S. District Judge**