IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOSHUA LEE HOSKINS, #R54570,<br><br>  Plaintiff,<br><br>v.<br><br>CHAD ADAMS, JOSEPH DUDEK, JAMES GROVES, GARRICK HALE, DANIEL HARRISS, CHARLES HECK, JUSTIN KULICH, LARUE LOVE, SETH MERACLE, STEVEN MUMBOWER, SCOTT PETITJEAN, CHARLES SWISHER, TREG VANDEKERKHOVE, AND CHAD WALL,<br><br>  Defendants. | Case No. 20-cv-00533-SPM |

# MEMORANDUM AND ORDER

**MCGLYNN, District Judge:**

Now pending before the Court is the motion for summary judgment filed by Defendants (Doc. 143). For the reasons set forth below, the motion is **GRANTED**.

## BACKGROUND

On June 5, 2020, plaintiff, Joshua Lee Hoskins ("Hoskins"), an inmate in the Illinois Department of Corrections currently incarcerated at the Dixon Correctional Center, commenced this action pursuant to 42 U.S.C. § 1983 (Doc. 1). His complaint was screened in accordance with 28 U.S.C. § 1915A, and on June 8, 2020, the Court found that Hoskins was permitted to proceed on the following claims:

 **Count 1:** Eighth Amendment claims against Adams, Dennison, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement, from

> June 5, 2019 until September 25, 2019, and January 6, 2020 until February 6, 2020, in R5 house.

**Count 2:** First Amendment claim against Adams, Dennison, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement in R5 house in retaliation for filing lawsuits and grievances.

**Count 4:** Eighth Amendment claim against Dudek, Meracle, and Kulich for failing to protect Hoskins from the fire set in the neighboring cell on August 31, 2019. (Doc. 6).

Following the review, defendants were served, defense counsel entered, answers and affirmative defenses were filed with the Court, and this case proceeded. On October 29, 2020, the Court dismissed defendants David Brock, Kale Lively, Donald Wanack, and Anthony Williams (Doc. 47).

On February 22, 2021, defendants filed a Motion for Partial Summary Judgment on the issue of exhaustion, along with supporting memorandum of law (Docs. 54-55). Following briefing, oral argument was held on July 8, 2021 (Doc. 80). At that time, Hoskins testified on his own behalf while three (3) witnesses, *to wit*: Chalene Hale, Robert Samolinski, and Jesse Reid, testified for the defendants (*Id*). On July 26, 2021, the Court granted in part and denied in part the motion for summary judgment on the issue of exhaustion (Doc. 82). Specifically, the Court dismissed Count 4; divided Count 1 into the following time periods: (a) from June 5, 2019 until September 17, 2020, and, (b) from January 6, 2020 until February 6, 2020; and made no changes to Count 2 (*Id*). Accordingly, Hoskins was allowed to proceed on the following counts:

**Count 1:** Eighth Amendment claims against Adams, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement: (a) from

Page **2** of **12**

>              June 5, 2019 until September 17, 2019, and (b) from January 6, 2020 until February 6, 2020, in R5 house.
>
> **Count 2:**   First Amendment claim against Adams, Dudek, Groves, Hale, Harris, Heck, Kulich, Love, Meracle, Mumbower, Petitjean, Swisher, Vandekerkhove, and Wall for keeping Hoskins in unconstitutional conditions of confinement in R5 house in retaliation for filing lawsuits and grievances.

Shortly thereafter the Court entered a scheduling order that included a discovery timeline as well as dispositive motion deadline (Doc. 83). On September 2, 2022, defendants filed the instant motion for summary judgment and memorandum in support thereof (Doc. 143). Within the motion, defendants contend they are entitled to judgment as a matter of law on plaintiff's conditions of confinement claims as well on his retaliation claim (*Id.*). In other words, defendants claim that Hoskins cannot meet his burden to show that his rights were violated under either the First and/or Eighth Amendment (*Id.*). Furthermore, defendants also assert that they are entitled to qualified immunity (*Id.*).

On September 7, 2022, Hoskins filed his (initial) response in opposition to the aforementioned motion for summary judgment (Docs. 145). In this response, Hoskins contended that he was under the control of defendants and that they never made cleaning supplies available to him and that they prevented him from sending kites and filing grievances (*Id.*).

In addition to this response, Hoskins sought leave to file a supplemental response as well as a second supplemental response (Docs. 149, 157). On October 12, 2022, the Court accepted the first supplemental response; however, on December 1, 2022, the Court declined to accept the second supplemental response as it was akin to a sur-reply, which is never accepted (Docs. 155, 158). Within the (accepted) supplement, Hoskins claimed that the alleged unsanitary cell conditions caused by the denial of cleaning supplies, negatively

impacted his health (*Id.*). He further claimed that he attempted to get medical care for conditions purportedly caused by the unsanitary cell conditions but was denied because his nurse sick call slips were destroyed by defendants[1] (*Id.*).

On October 21, 2022, defendants filed their reply brief in support of summary judgment asserting that Hoskins failed to present evidence sufficient to allow a reasonable jury to return a verdict in his favor (Doc. 156). Moreover, they point out that there is no evidence to support a physical injury that arose as a result of the alleged unconstitutional conditions of confinement (*Id.*).

## STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most

---

[1] Hoskins cited to 20-cv-575-GCS wherein he asserted that he complained to Caitlin Hess about several medical conditions related to unsanitary cell conditions, including spider bites, rashes, boils, swelling, headaches, and blisters. In that case, Magistrate Judge Sison granted summary judgment finding that there was no evidence that Hoskins submitted requests for these issues, although there was evidence that he had submitted nurse sick call requests for other matters and had been treated many times from June 2019 to June 2020 for other medical and mental health issues.

favorable to the non-moving party." *Nat'l Am. Ins. Co. v. Artisan & Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted)

## DISCUSSION

### I. Eighth Amendment Claim – Unconstitutional Conditions of Confinement

In Count 1, Hoskins claims that his rights under the Eighth Amendment were violated when he was confined in unsanitary conditions in R5 house. The first part of the claim encompasses a time period from June 5, 2019 until September 17, 2019; however, from 7/8/2019 – 7/10/2019 he was on crisis watch in R6 house. It is important to note that

during that time period, which was approximately 103 days, Hoskins was in 5 different cells[2], yet claims that each cell within the R5 house was unsanitary. The time period of the second part of the claim, 1/6/2020 – 2/6/2020, was approximately 31 days; however, from 1/6/2020 – 1/9/2020, he was on crisis watch in a cell in R6 house. (Doc. 143-1, p. 64). As such, Hoskins spent less than 130 days total in cells in R5 which he claimed were unconstitutionally unsanitary.

### a. Law

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Robinson v. California,* 370 U.S. 660 (1962). To prevail on an Eighth Amendment claim, an inmate must show that the conditions of his incarceration denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter,* 501 U.S. 294 (1991). Life's necessities include shelter, heat, clothing, sanitation, and hygiene items. *See Budd v. Motley,* 711 F.3d 840, 842-43 (7th Cir. 2013); *Gillis v. Litscher,* 468 F.3d 488, 493 (7th Cir. 2006). A prisoner must also show that the defendants acted with a culpable state of mind, i.e., [A] prison official may be held liable under the Eighth Amendment for denying humane conditions of confinement only if he knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan,* 511 U.S. 825, 847 (1994).

Thus, the Eighth Amendment is violated when:

1. There is a deprivation that is, from an objective standpoint,

---

[2] In his deposition, Hoskins identifies the following timeframes for the different cells: 1. 6/5/2019 – 6/10/2019 (6 days); 2. 6/10/2019 – 7/8/2019 (28 days); 3. 7/8/2019 – 7/10/2019 (3 days); 4. 7/10/2019 – 7/16/2019 (7 days); and, 5. 7/16/2019 – 9/25/2019 (71 days) (Doc. 141-1).

    sufficiently serious that it results in the denial of the minimal civilized measure of life's necessities; *and*,

  2. Where prison officials are deliberately indifferent to this state of affairs. *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (emphasis added).

The objective inquiry focuses on the seriousness of the deprivation and requires the plaintiff to demonstrate that he was denied the "minimal civilized measure of life's necessities." *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). When assessing the objective severity of conditions of confinement, the Court must consider their nature, duration, and any harm caused by the conditions. *See Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012). A deprivation must be sufficiently serious; that is, the condition must create a serious risk to an inmate's health or safety or be sufficiently prolonged so as to cause significant pain or discomfort. *Id.* In other words, conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim. *Adams v. Pate,* 445 F.2d 105, 108, 109 (7th Cir.1971).

If Hoskins is able to show that the conditions of confinement were objectively serious, he must also show that each of the Defendants was deliberately indifferent to the risk to his health and safety. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Hoskins must demonstrate that the official was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the official actually drew that inference. *Id*.

  **b. Analysis**

In total, Hoskins complains about five different dirty cells within R5 house. If his allegations are true, it is possible that the conditions were inhumane, but that is not the

end of the inquiry. *Thomas v. Blackard,* 2 F.4th 716, 720 (7th Cir. 2021). Hoskins must do more than demonstrate a triable issue of fact with respect to the conditions he faces; he must also show that he suffered some cognizable harm from the overall lack of a sanitary environment, and that the defendants' deliberate indifference caused that harm. See *Carey v. Piphus*, 435 U.S. 247, 264 (1978).

Notwithstanding the foregoing, this Court is not convinced that Hoskins has shown inhumane conditions. It takes extreme circumstances for an Eighth Amendment violation to be recognized for alleged deprivation of cleaning supplies. See, *e.g.*, *Budd v. Motley*, 711 F.3d 840, 843 (7th Cir.2013). Conditions that create "temporary inconveniences and discomforts" or that make "confinement in such quarters unpleasant" are insufficient to state an Eighth Amendment claim. *Adams v. Pate,* 445 F.2d 105, 108, 109 (7th Cir.1971). Typically, periods of confinement under unsanitary conditions of many months' duration have been found to violate the Eighth Amendment. *See, e.g., Sanders v. Sheahan,* 198 F.3d 626, 629 (7th Cir.1999).

In this case, the maximum time period Hoskins spent in any one cell during the complaint period was the 63 days between June 16 and September 17, 2019 while the majority of his complaints relate to his original cell at Pinckneyville where he was confined for less than one week, from June 5th to June 10th. Recently the Seventh Circuit held that it was hard to evaluate the objective component of a complaint when a prisoner has been in multiple cells. *Johnson v. Seiter,* 29 F.4th 895, 904 (7th Cir. 2022). This Court concurs. Hoskins was in multiple cells and had at least 3 cell mates while in segregation, any of which could have obtained cleaning supplies[3].

---

[3] Hoskins testified, "[a]ll of my cellies was in then cells was wierdoes dealing with psychotic issues, didn't want to clean the cell up, didn't want to even write grievances about the cell conditions." (Doc. 143-1, p. 14).

Here, even if Hoskins could satisfy the objective element of his claim, he cannot satisfy the subjective element—deliberate indifference—as to any defendant. Simply put, no reasonable jury could find that any defendant was deliberately indifferent to the alleged unsanitary cell conditions Hoskins claimed in either section of Count I.

Hoskins must present evidence raising a triable issue of fact that defendants knew of and consciously disregarded an excessive risk to his health and safety. *See Cesal v. Moats*, 851 F.3d 714, 722 (7th Cir. 2017). Hoskins identifies no evidence suggesting any defendant knew of and disregarded any excessive risk to his health or safety insofar as it relates to the conditions of his confinement. Although he repeatedly indicated in his deposition testimony that he was never provided with cleaning supplies while in R5, there is no indication that he ever complained to one of the defendants (Doc. 143-1). Additionally, he never went to the healthcare units for any health complaints related to the alleged unsanitary conditions (Doc. 143-1, p. 10). His testimony that the defendants all "knew" he was placed in an unsanitary cell and would not bring him cleaning supplies, and his contention that Dudek was placing him in a special cell, without more, is too vague to meet the deliberate indifference standard under the circumstances.

More fundamentally, although many of the defendants may have made rounds through R5 house and talked to inmates about their complaints, there is no evidence that any of them was specifically aware of the particular conditions forming the basis of Hoskins's Eighth Amendment claim. As such, Hoskin's conclusory assertions that the defendants "did nothing" cannot create a genuine issue of material fact, particularly without any evidence about what either defendant may have done or not done. "Summary judgment is not a time to be coy: '[c]onclusory statements not grounded in specific facts'

are not enough." *Sommerfield v. City of Chicago*, 863 F.3d 645, 649 (7th Cir. 2017) (quoting *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016)). Therefore, summary judgment will be granted as to Count 1.

## II.   First Amendment Claim – Unconstitutional Conditions of Confinement in Retaliation

In Count 2, Hoskins claims that his rights under the First Amendment were violated when he was confined in unsanitary conditions in R5 house in retaliation for filing lawsuits and grievances. This Court is aware of Hoskins similarly alleging retaliation against personnel at Pinckneyville in the following cases: (1) *Hoskins v. Swisher, et al.*, 20-cv-302-RJD (S.D. Ill. Mar. 23, 2020) (alleged that he was sent to segregation and denied attendance at religious services in retaliation for filing grievances and lawsuits); (2) *Hoskins v. Swisher, et al.*, 20-cv-522-SMY (S.D. Ill, June 3, 2020) (alleged that he was denied personal hygiene items in retaliation for filing grievances and lawsuits); and, (3) *Hoskins v. Hess*, 20-cv-575-GCS (S.D. Ill, June 16, 2020) (alleged that he was denied medical care in retaliation for filing grievances and lawsuits).

### a. Law

"To prevail on a First Amendment retaliation claim, [a plaintiff] must ultimately show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the first Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "Once the plaintiff proves that an improper purpose was a motivating factor, the burden shifts to the defendant ... to prove by a preponderance of the evidence that the same actions would have occurred in the absence of the protected conduct." *Spiegla v. Hull*, 371 F.3d 928, 943

(7th Cir. 2004); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).

In retaliation cases, even if the alleged conduct by itself would likely not violate the Constitution, "if the acts were taken in retaliation for the exercise of a constitutionally protected right, then they are actionable under § 1983." *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Plaintiffs need only demonstrate conduct that would "deter a person of ordinary firmness from exercising First Amendment activity in the future" (*Id.*).

**b. Analysis**

At the summary judgment stage, the plaintiff has the burden of producing evidence that his First Amendment protected activity was at least a motivating factor to the alleged retaliatory action. *See Kindred v Eisenhauer,* 679 F.3d 957, 965 (7th Cir. 2012). Although this burden is low, Hoskins has failed to surpass it.

While it is true that Hoskins has an unequivocal right to file grievances and lawsuits, and that it is protected activity under the First Amendment, Hoskins fails to causally link his activity to the perceived retaliatory conduct. There is simply no evidence in the record that defendants caused Hoskins to be confined in at least 5 different cells that he claims were unsanitary nor is there any evidence that any of the defendants denied to provide him with cleaning supplies upon request or directed others to provide him with cleaning supplies. In fact, he claims the retaliation was based upon conduct that had occurred several years earlier while at another facility (Menard). Additionally, much of his claims surrounding the alleged retaliation revolved around inaction, not action, by the defendants. As such, no reasonable jury could find any defendant acted with retaliatory motive; therefore, summary judgment will be granted as to Count 2.

### III. Qualified Immunity

Finally, although this Court has determined that summary judgment is appropriate, defendants also claim that they are entitled to qualified immunity, which is a doctrine that "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818)). In other words, qualified immunity does not shield a government official if the alleged conduct violates a right that was clearly established at the time. *Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012).

While it is true that an inmate has a right to humane conditions of confinement, there is no evidence that defendants violated that right. Furthermore, it was not clear to a reasonable officer that the interior of Hoskins' cells were unsanitary nor was it clear that the officers should provide cleaning supplies, even when not requested. As such, this Court finds the defendants herein are entitled to qualified immunity.

### CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment in its entirety. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to close the case and enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: July 31, 2023**

*/s/ Stephen P. McGlynn*
**STEPHEN P. McGLYNN**
**U.S. District Judge**